(No. 31646.—

OSCAR E. APPLE *et al.,* Appellees, *vs.* DOLORES J. APPLE *et al.,* Appellants.

*Opinion filed November 27, 1950.*

BELL, FARRAR & SCOTT, of Rock Island, (EARL L. SCOTT, of counsel,) for appellants.

MURPHY & MURPHY, of Rock Island, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiffs, Oscar E. Apple and Bertha D. Apple, his wife, brought an action in the circuit court of Rock Island County against the defendants, Dolores J. Apple and Patricia J. Apple, to set aside a deed as a cloud on their title to certain real estate and for an accounting of rents and profits. Plaintiffs claimed title as joint tenants under a warranty deed from Frank A. Johnson and Emma A. Johnson, his wife, dated June 21, 1947, and recorded August 8, 1947. The instrument attacked by plaintiffs as a cloud upon their title is a warranty deed executed on June 25, 1947, by Frank A. Johnson, alone, his wife, Emma, having died on June 24, 1947, conveying to defendants, with the reservation of a life estate, the same property previously conveyed to plaintiffs. This deed was recorded the same day it was executed, namely, June 25, 1947. Defendants, by their amended counterclaim, sought to have the deed to plaintiffs declared null and void upon

the grounds that the grantors lacked mental capacity and that the deed was obtained by undue influence. The master to whom the cause was referred found the issues for the plaintiffs and his report was confirmed by the chancellor. A decree was entered setting aside the deed to defendants, dismissing defendants' counterclaim for the want of equity, and re-referring the cause to the master for an accounting of rents and profits received by defendants. There being no controversy as to the accounting, the decree entered is final and appealable. Defendants prosecute a direct appeal, a freehold being necessarily involved.

Defendants did not introduce any evidence as to the mental condition of Frank Johnson, who was also their own grantor, and have abandoned their contention that Frank and Emma Johnson were mentally incompetent when they executed the conveyance to plaintiffs. As a consequence, the sole question presented for determination is whether the finding that a fiduciary relationship did not exist is contrary to the manifest weight of the evidence.

The facts are largely undisputed. The property involved is a lot improved with a double dwelling in the city of Rock Island and was formerly owned by Frank and Emma Johnson, as joint tenants. At the time the deeds were executed, Frank Johnson was eighty years of age, blind in one eye, had suffered two strokes, was paralyzed on his right side, and had been confined to bed for several months. He had no known blood relatives. Emma Johnson was sixty-six years of age and suffered from heart disease and chronic nephritis. Plaintiff, Oscar Apple, is a brother of Emma Johnson and was then about seventy years of age. Prior to his marriage, about twenty-five years earlier, he had lived with his sister and her husband. Defendants are grand-nieces of Emma Johnson and Oscar Apple, being the children of DeArmond S. Apple, their nephew, who is the son of their deceased brother. Both Oscar Apple and DeArmond Apple are engaged in the real-estate business.

About the middle of June, 1947, Emma Johnson developed an edema or swelling of her entire body and, on June 19, the family physician advised that both she and her husband should go to a hospital, her husband being included because there would be no one to take care of him at home. On June 20, they were removed to the Lutheran Hospital in Moline, where they occupied different rooms. Emma Johnson died on June 24. Frank Johnson remained at the hospital and died there November 1, 1947.

The deeds of June 21, to plaintiffs, and June 25, to defendants, both of which were without consideration, were executed under the following circumstances. On June 19, after Frank and Emma Johnson learned they had to go to the hospital, Oscar Apple visited them at their home. No one else was present. Emma Johnson told him that she and her husband wanted him to have their bank accounts so he could pay their bills and that they had decided to give him their real estate. In response to her inquiry as to how this might be accomplished, Oscar Apple informed her that he would need a power of attorney and their bank books in order to pay their bills and that, as to the property, they could make wills or convey it to him. On his own volition, he suggested that he could reconvey the property to them when they returned from the hospital.

On June 21, Oscar Apple appeared at the hospital with a warranty deed which he had prepared himself and a power of attorney authorizing him to act for the Johnsons with respect to their bank account. Frank Johnson signed both instruments with his mark, his hand being too paralyzed for him to sign his name. His signature was witnessed by the superintendent of the hospital who remembered little about the transaction. Apple then took the power of attorney and deed to Emma Johnson and she signed them in his presence, alone. The chancellor having found that Frank and Emma Johnson were mentally competent and defendants having abandoned their conten-

tion to the contrary, the evidence as to the mental condition of the grantors need not be reviewed. Two days later, on June 23, Apple had the deeds acknowledged, out of the presence of the grantors. The chancellor correctly held that the acknowledgment was void, and, although the grantors thus retained their homestead rights in the property, (*Rewerts* v. *Johnson,* 311 Ill. 594; *McNichols* v. *McNichols,* 299 Ill. 362,) no question is made with respect to their homestead estate.

Between June 21 and June 24, Oscar Apple and defendants' father, DeArmond Apple, had several conversations with respect to the business affairs of Frank and Emma Johnson. To DeArmond's suggestion that something be said to Frank and Emma Johnson with respect to their property, Oscar replied that he had a power of attorney and a deed. The rest of what was said is disputed. According to DeArmond, he told Oscar he did not see any necessity for a deed and Oscar stated that the Johnsons would be in the hospital for a long time and, although they had about $4000 in the bank, he would probably have to lend them money and that was why he took a deed to the real estate. Oscar denied this categorically.

DeArmond testified that the deed to his daughters was prepared at Johnson's own request. The deed was drafted by a lawyer who shared office space with DeArmond and was executed on June 25 in the presence of DeArmond, the lawyer, a notary public and a nurse. At the same time, Johnson gave DeArmond a general power of attorney, revoking all other powers of attorney, and also executed a will leaving one half of his estate to DeArmond and his wife and naming DeArmond as his executor.

On this state of the record, both the master and the chancellor found that a fiduciary relationship did not exist between Oscar Apple and Frank and Emma Johnson. The law is well settled. A confidential or fiduciary relationship exists in all cases where trust and confidence are reposed

in another who thereby gains a resulting influence and superiority. (*Krieg* v. *Felgner,* 400 Ill. 113; *Brod* v. *Brod,* 390 Ill. 312.) The relationship may exist as a matter of law, as between attorney and client, guardian and ward, and principal and agent, or it may be moral, social, domestic, or even personal in its origin. (*Stone* v. *Stone, ante,* p. 66; *Kester* v. *Crilly,* 405 Ill. 425.) The initial burden of proof is on the party seeking relief to show the existence of a fiduciary relationship. (*Pfaff* v. *Petrie,* 396 Ill. 44; *Stewart* v. *Sunagel,* 394 Ill. 209.) Where the alleged relation does not exist as a matter of law, it must be proved by clear and convincing evidence. *Galvin* v. *O'Neill,* 393 Ill. 475; *McGlaughlin* v. *Pickerel,* 381 Ill. 574.

The mere fact of family relation does not create a fiduciary relationship as a matter of law and the fiduciary relationship alleged must be proved by competent evidence. (*Stewart* v. *Sunagel,* 394 Ill. 209; *Kasbohm* v. *Miller,* 366 Ill. 484.) Defendants concede this and further concede that the poor health of Frank and Emma Johnson and Oscar Apple's admitted enjoyment of no more than the natural trust normally existing between brother and sister and brothers-in-law do not show a fiduciary relationship. It is contended, however, that these facts form a basis for such a relationship and, when taken together with the additional fact that Oscar Apple acted for and advised Frank and Emma Johnson in their business affairs, are sufficient to prove the existence of a confidential relationship. The fallacy in the argument advanced is that there is no showing that the Johnsons ever sought or received advice in business matters from Oscar Apple prior to their decision on June 19, 1947, to give the property to him. Oscar Apple's consent to act for the Johnsons in paying their bills and his suggestions as to how this might be accomplished were part of the same conversation at which his sister told him that she and her husband wanted to give him the real estate. This does not, of course, constitute clear, convinc-

ing and unmistakable proof of a confidential relationship at the time of the challenged conveyance. Although the power of attorney to Oscar Apple created a fiduciary relationship as a matter of law, (*Stone* v. *Stone, ante,* p. 66; *Rieger* v. *Brandt,* 329 Ill. 21,) whatever influence and superiority he thus acquired was not obtained prior to the gift of the real estate. In short, there was no fiduciary relationship at the time of the conveyance to plaintiffs, and the chancellor's finding to this effect is not contrary to the manifest weight of the evidence.

The decree of the circuit court of Rock Island County is affirmed.

*Decree affirmed.*