*In re* MARRIAGE OF CAROL MAE WHETSTONE, Petitioner-Appellant, and RICHARD P. WHETSTONE, Respondent-Appellee.

First District (4th Division)    No. 79-1448

Opinion filed July 31, 1980.

Meinhardt & Kightlinger, Ltd., of Chicago (John D. Kightlinger, of counsel), for appellant.

Arnold B. Kalnitz, of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The petitioner, Carol Mae Good (formerly Carol Mae Whetstone), appeals from an order of the circuit court of Cook County which required the respondent, Richard P. Whetstone, to pay $309 as child support arrearages. On appeal Good argues that the trial court erred in its construction of the child support and alimony provisions of the divorce decree and should have required Whetstone to pay over $10,000 in child support and alimony arrearages.

The parties were divorced on March 11, 1974. The parties' settlement agreement was incorporated into the judgment of divorce. The relevant portion of that agreement provides:

> "III. That the Husband shall pay to the Wife the sum of $35 per week as and for child support for each child.
>
> IV. That the Husband shall pay to the Wife the sum of $38.00 per week as and for alimony, which makes a total payment of $108.00 per week for alimony and child support. That the Wife shall have the right to work without prejudice to her rights to receive alimony, and any monies received by the Wife shall not be a basis for the reduction of her alimony. It is understood that the Wife is to receive 50% of the Husband's income for alimony and child support for the two children."

At the February 1974 hearing on the complaint for divorce, Good testified that Whetstone was then earning $414 net every two weeks. She stated that it was understood that she was to receive 50% of Whetstone's net income as child support and alimony.

On November 22, 1978, Good filed a petition seeking child support

and alimony arrearages. Other issues not germane to this appeal were raised by the parties by petition and counterpetition. On June 21, 1979, the trial court ruled on Good's petition after considering certain documents which were stipulated to by the parties, including the deposition of each of them. The relevant portion of the order appealed from provides:

"The Court Finds as follows:

1. Paragraphs III and IV [of the parties' settlement agreement], are construed that Whetstone is, and was, obligated to pay the specific dollar sums 35°°/xx per week per child set forth therein and Whetstone was not obligated to pay to Good 50 percent of Whetstone's income for alimony and child support;

2. * * * as of the date of this order Whetstone owes for child support and alimony in the sum of $23,474.00, and, further, Whetstone has paid the sum of $23,165.00 to date, and that, therefore, Whetstone owes $309.00 for child support."

The following chart summarizes the amounts actually paid by Whetstone to Good, the amounts due under a percentage of income construction of the parties' agreement, and the amounts due under the specific sum provision of the agreement.

|  | Actually paid. | Amounts under a percentage of income construction. | Amounts under the specific sum provision. |
|---|---|---|---|
| 1974 | $5309 | $5762 | $5184 |
| 1975 | 6345 | 6898 | 5610 |
| 1976 | 5372 | 6362 | 4470 |
| 1977 | 4802 | 6790 | 3640 |
| 1978 | 1127[1] | 7635 | 3640 |

Good first contends that the language of the settlement agreement is clear and unambiguous. She argues the language is susceptible to only one construction, that Whetstone is required to pay 50% of his income as child support and alimony and that the dollar amount was included only to show the parties' financial situation at the time of the agreement.

■■ Settlement agreements which have been incorporated into divorce decrees are subject to the rules of construction applicable to contracts generally. (*Sudler v. Sudler* (1972), 6 Ill. App. 3d 546, 286 N.E.2d 113; *Schwartz v. Schwartz* (1966), 69 Ill. App. 2d 128, 216 N.E.2d 505.) According to these rules, an agreement is ambiguous if the language used

---

[1] In 1978, a dispute arose over another provision of the divorce decree and Whetstone made payments to Good only during January, February and March.

is reasonably or fairly susceptible to more than one meaning. *Sudler*; *Schwartz*.

■■ We believe the agreement here is reasonably susceptible to more than one meaning and is thus ambiguous. One reasonable construction is that urged by Good. Another reasonable construction, asserted by Whetstone, is that Whetstone is required to pay the specific sum and that the percentage of income clause is not an agreement that Whetstone pay 50% of whatever his future income might be, but rather is merely a representation that at the time of the agreement the specific sum agreed to was in fact 50% of Whetstone's income.

Good alternatively contends that even if the agreement is ambiguous it must be interpreted to require Whetstone to pay 50% of his net income in child support and alimony. She argues that the parties' intent that this be done is manifested by the facts that (1) the specific amount set forth in the agreement was in fact one-half of Whetstone's income at that time; (2) the parties had a mentally retarded child; and (3) Whetstone actually paid more than the specific amount set forth in the agreement.

Where the language of an agreement is ambiguous the contract is to be construed so as to give effect to the intention of the parties at the time the agreement was made. (*Illinois State Toll Highway Com. v. M. J. Boyle & Co.* (1962), 38 Ill. App. 2d 38, 186 N.E.2d 390.) In so doing the court may consider the surrounding circumstances at the time of the agreement (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370 N.E.2d 188) and may look to the interpretation which the parties themselves have placed on the agreement as shown by their contemporaneous or subsequent acts or conduct. (*Freeland v. Edwards* (1957), 11 Ill. 2d 395, 142 N.E.2d 701; *Winn v. Turner* (1977), 55 Ill. App. 3d 291, 371 N.E.2d 170.) Thus, the facts that the specific sum set forth in the agreement was 50% of Whetstone's income at the time, that one of the children of the parties is retarded, and that Whetstone paid more child support and alimony than the specific sum set forth in the agreement are to be considered in determining the intent of the parties.

■■ We do not believe that the inference to be drawn from the factors pointed out by Good is that the parties intended Whetstone to pay 50% of whatever his income might be until or unless the agreed order· is modified. The fact that the specific sum set forth in the agreement was at the time of the agreement approximately 50% of Whetstone's net income could, as discussed above, support the interpretation of either party. The fact that the parties have a retarded child does not require the conclusion that the percentage clause controls, especially since there is no allegation that the specific sum provision was, when the agreement was executed, inadequate to meet any special needs of the child. The fact that Whetstone made payments to Good amounting to more than the specific

sum would support Good's contention if his payments amounted to one-half his income. However, that is not the case. During each year covered by the agreement Whetstone paid more than the specific sum set forth in the agreement but less than 50% of his income. In 1974 Whetstone paid $452 less than 50% of his income and $125 more than the specific sum set forth in the agreement. In 1975, he paid $553 less than 50% of his income and $735 more than the specific sum. In 1976, his payments were $990 less than required under the percentage of income provision and $902 more than under the specific sum provision. In 1977, he paid $1,988 less than required under the percentage of income provision and $162 more than under the specific sum provision. Therefore, we are not persuaded by these factors to construe the agreement as requiring Whetstone to pay 50% of his income as child support and alimony.

Accordingly, the order of the trial court is affirmed.

Affirmed.

JOHNSON and ROMITI, JJ., concur.